**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| **OCIE CARLISLE, MICHAEL MILLER,** ) | |
| **DOUGLAS HARRIS, DAN BEILMAN,** ) | |
| **DANIEL GULIANO,  RICHARD HILL,** ) | |
| **ANTHONY WATERS, BILLY FOUNTAIN,** ) | |
| **BILLY JOHNSON, JOHN MOBERG,** ) | |
| **JENNIFER MURRAY-JENKINS, DREW** ) | |
| **VICTOR, DAVID AXELRAD, ALISON** ) **CASE NO.: 4:20-CV-1023** | |
| **HESTER, WILLIAM RODWAY, RANDY** ) | |
| **NIELSON, JENNIFER MCGONAGILL,** ) | |
| **ROBERT RIENDEAU, LEEOR SHAPIRA,** ) | |
| **DONALD WINKLEBLECH, KEITH GREN,** ) | |
| **JOSEPH PICKETT, DAVID DOWNING,** ) | |
| **CHRISTOPHER MILLER, STEVEN** ) | |
| **TAYLOR, SYRONDA GAMBLE, STEVE** ) | |
| **TOTH, AND KARRI BELL,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **vs** ) | |
| ) **JURY TRIAL DEMANDED** | |
| **EMERSON ELECTRIC CO,** ) | |
| **Serve: 8000 West Florissant Ave.,** ) | |
| **St. Louis, MO 63136** ) | |
| ) | |
| **Defendant.** ) | |

## <u>COMPLAINT</u>

COME NOW, Ocie Carlisle, Michael Miller, Douglas Harris, Dan Beilman, Daniel

Guliano,  Richard Hill, Anthony Waters, Billy Fountain, Billy Johnson, John Moberg, Jennifer

Murray-Jenkins, Drew Victor, David Axelrad, Alison Hester, William Rodway, Randy Nielson,

Jennifer McGonagill, Robert Riendeau, Leeor Shapira, Donald Winkleblech, Keith Gren, Joseph

Pickett,  David Downing, Christopher Miller, Steven Taylor, Syronda Gamble, Steve Toth, and

Karri Bell ("Plaintiffs"), individually and on behalf of all others similarly situated in the United

States and their respective States, and for their Third Consolidated Amended Complaint against

Defendant Emerson Electric Company ("Defendant"), state as follows:

**INTRODUCTION**

1.      This is a class action on behalf of all persons and entities who purchased

Defendant's RIDGID brand wet/dry vacuums ("RIDGID" or the "Product").

2.      RIDGID is marketed, advertised, and sold by Defendant with material

misrepresentations regarding RIDGID's horsepower.

3.      The most important misrepresentations at issue, and which appear noticeably in

Defendant's marketing of RIDGID and on the RIDGID product itself, are horsepower and price.



4.      Defendant's website lists the horsepower as a top "Feature" of RIDGID.[1]

5.      Defendant's representations regarding RIDGID's horsepower are false, deceptive

and/or misleading because Defendant significantly overstates them.

6.      Plaintiffs conducted independent tests on several RIDGID models and these

findings conclusively show Defendant's horsepower representations are false, deceptive and/or

misleading.

---

[1] http://www.ridgid.com/Tools/WD1270-12G-Vac/EN/index.htm (last visited September 16, 2013).

7.     Plaintiffs' tests revealed that none of the tested RIDGIDs could obtain electrical power consumption consistent with Defendant's claimed "peak" horsepower ratings.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d) since Plaintiffs reside in multiple states, greater than 2/3 do not reside in Missouri, and the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

9.     Venue is proper in this Court because Defendant is headquartered in this District and has advertised, conducted business, and sold products here as well.

## THE PARTIES

10.     Ocie Carlisle resides in Fairfield in the State of Alabama.  In May of 2019, Mr. Carlisle purchased Defendant's wet/dry vacuum for personal, family or household purposes.  Mr. Carlisle viewed and relied on Defendant's misrepresentations of "5.0 Peak HP" when making her purchase.  This reliance was to Mr. Carlisle's detriment, and she would not have purchased Defendant's product had she known the actual horsepower.

11.     Michael Miller resides in Chandler in the State of Arizona.  In September of 2019, Mr. Miller purchased Defendant's wet/dry vacuum for personal, family or household purposes. Mr. Miller viewed and relied on Defendant's misrepresentations of "6.5 Peak HP" when making his purchase.  This reliance was to Mr. Miller's detriment, and he would not have purchased Defendant's product had he known the actual horsepower.

12.     Douglas Harris resides in Sterling in the State of Connecticut.  Mr. Harris previously resided in the State of Rhode Island and made his purchase in February 2018 in Rhode Island of the Defendant's wet/dry vacuum for personal, family or household purposes.  Mr. Harris

viewed and relied on Defendant's misrepresentations of "5.0 Peak HP" when making his purchase. This reliance was to Mr. Harris's detriment, and he would not have purchased Defendant's product had he known the actual horsepower.

13.     Dan Beilman resides in North Port in the State of Florida.  Mr. Beilman previously resided in the State of Kentucky and made his purchase in November of 2014 in Kentucky of the Defendant's wet/dry vacuum for personal, family or household purposes.  Mr. Beilman viewed and relied on Defendant's misrepresentations of "5.0 Peak HP" when making his purchase.  This reliance was to Mr. Beilman's detriment, and he would not have purchased Defendant's product had he known the actual horsepower.

14.     Daniel Guliano resides in Palm Beach in the State of Florida.  In December of 2019, Mr. Guliano purchased Defendant's wet/dry vacuum for personal, family or household purposes.   Mr. Guliano viewed and relied on Defendant's misrepresentations of "5.0 Peak HP" when making his purchase.  This reliance was to Mr. Guliano's detriment, and he would not have purchased Defendant's product had he known the actual horsepower.

15.     Richard Hill resides in Panama City in the State of Florida.  In January of 2019, Mr. Hill purchased Defendant's wet/dry vacuum for personal, family or household purposes.  Mr. Hill viewed and relied on Defendant's misrepresentations of "4.5 Peak HP" when making his purchase.  This reliance was to Mr. Hill's detriment, and he would not have purchased Defendant's product had he known the actual horsepower.

16.     Anthony Waters resides in Fort Pierce in the State of Florida.  In May of 2019, Mr. Waters purchased Defendant's wet/dry vacuum for personal, family or household purposes.   Mr. Waters viewed and relied on Defendant's misrepresentations of "6.5 Peak HP" when making his

purchase. This reliance was to Mr. Waters's detriment, and he would not have purchased Defendant's product had he known the actual horsepower.

17.     Billy Fountain resides in Locust Grove in the State of Georgia. In May of 2017, Mr. Fountain purchased Defendant's wet/dry vacuum for personal, family or household purposes. Mr. Fountain viewed and relied on Defendant's misrepresentations of "2.0 Peak HP" when making his purchase. This reliance was to Mr. Fountain's detriment, and he would not have purchased Defendant's product had he known the actual horsepower.

18.     Billy Johnson resides in Marquisville in the State of Iowa. In December of 2016, Mr. Johnson purchased Defendant's wet/dry vacuum for personal, family or household purposes. Mr. Johnson viewed and relied on Defendant's misrepresentations of "6.5 Peak HP" when making his purchase. This reliance was to Mr. Johnson's detriment, and he would not have purchased Defendant's product had he known the actual horsepower.

19.     John Moberg resides in Sturbridge in the State of Massachusetts. In approximately early 2016, Mr. Moberg purchased Defendant's wet/dry vacuum for personal, family or household purposes. Mr. Moberg viewed and relied on Defendant's misrepresentations of "5.0 Peak HP" when making his purchase. This reliance was to Mr. Moberg's detriment, and he would not have purchased Defendant's product had he known the actual horsepower.

20.     Jennifer Murray-Jenkins resides in Baltimore in the State of Maryland. In April of 2017, Ms. Murray-Jenkins purchased Defendant's wet/dry vacuum for personal, family or household purposes. Ms. Murray-Jenkins viewed and relied on Defendant's misrepresentations of "3.5 Peak HP" when making her purchase. This reliance was to Ms. Murray-Jenkins's detriment, and she would not have purchased Defendant's product had she known the actual horsepower.

21.      Drew Victor resides in Pownal in the State of Maine.  In June of 2016, Mr. Victor purchased Defendant's wet/dry vacuum for personal, family or household purposes.   Mr. Victor viewed and relied on Defendant's misrepresentations of "6.0 Peak HP" when making his purchase. This reliance was to Mr. Victor's detriment, and he would not have purchased Defendant's product had he known the actual horsepower.

22.      David Axelrad resides in Wixom in the State of Michigan.  In the summer of 2016, Mr. Axelrad purchased Defendant's wet/dry vacuum for personal, family or household purposes. Mr. Axelrad viewed and relied on Defendant's misrepresentations of "5.0 Peak HP" when making his purchase.  This reliance was to Mr. Axelrad's detriment, and he would not have purchased Defendant's product had he known the actual horsepower.

23.      Alison Hester resides in Southfield in the State of Michigan.  In the summer of 2016, Mr. Hester purchased Defendant's wet/dry vacuum for personal, family or household purposes.  Mr. Hester viewed and relied on Defendant's misrepresentations of "6.0 Peak HP" when making her purchase.  This reliance was to Mr. Hester's detriment, and she would not have purchased Defendant's product had she known the actual horsepower.

24.      William Rodway resides in Clinton in the State of Michigan.  In the summer of 2014, Mr. Rodway purchased Defendant's wet/dry vacuum for personal, family or household purposes.  Mr. Rodway viewed and relied on Defendant's misrepresentations of "5.0 Peak HP" when making his purchase.  This reliance was to Mr. Rodway's detriment, and he would not have purchased Defendant's product had he known the actual horsepower.

25.      Randy Nielson resides in Cape Girardeau in the State of Missouri.  In December of 2016, Mr. Nielson purchased Defendant's wet/dry vacuum for personal, family or household purposes.  Mr. Nielson viewed and relied on Defendant's misrepresentations of "3.5 Peak HP"

when making his purchase.  This reliance was to Mr. Nielson's detriment, and he would not have purchased Defendant's product had he known the actual horsepower.

26.     Jennifer McGonagill resides in Enid in the State of Mississippi.  In September of 2019, Ms. McGonagill purchased Defendant's wet/dry vacuum for personal, family or household purposes.   Ms. McGonagill viewed and relied on Defendant's misrepresentations of "6.5 Peak HP" when making her purchase.  This reliance was to Ms. McGonagill's detriment, and she would not have purchased Defendant's product had she known the actual horsepower.

27.     Robert Riendeau resides in Mount Vernon in the State of New Hampshire.  In December of 2019, Mr. Riendeau purchased Defendant's wet/dry vacuum for personal, family or household purposes.  Mr. Riendeau viewed and relied on Defendant's misrepresentations of "5.0 Peak HP" when making his purchase.  This reliance was to Mr. Riendeau's detriment, and he would not have purchased Defendant's product had he known the actual horsepower.

28.     Leeor Shapira resides in Roselle Park in the State of New Jersey.  In the March of 2008, Mr. Leeor purchased Defendant's wet/dry vacuum for personal, family or household purposes.   Mr. Leeor viewed and relied on Defendant's misrepresentations of "5.0 Peak HP" when making her purchase.  This reliance was to Mr. Leeor's detriment, and she would not have purchased Defendant's product had she known the actual horsepower.

29.     Donald Winkleblech resides in Morganville in the State of New Jersey.  In September of 2019, Mr. Winkleblech purchased Defendant's wet/dry vacuum for personal, family or household purposes.  Mr. Winkleblech viewed and relied on Defendant's misrepresentations of "5.0 Peak HP" when making his purchase.  This reliance was to Mr. Winkleblech's detriment, and he would not have purchased Defendant's product had he known the actual horsepower.

30.     Keith Gren resides in Pahrump in the State of Nevada.  Mr. Gren previously resided in the State of California and made his purchase in March of 2019 in California of the Defendant's wet/dry vacuum for personal, family or household purposes.  Mr. Gren viewed and relied on Defendant's misrepresentations of "6.5 Peak HP" when making his purchase.  This reliance was to Mr. Gren's detriment, and he would not have purchased Defendant's product had he known the actual horsepower.

31.     Joseph Pickett resides in Stagecoach in the State of Nevada.  Mr. Pickett previously resided in the State of Alabama and made his purchase in the summer of 2018 in Alabama of the Defendant's wet/dry vacuum for personal, family or household purposes.  Mr. Pickett viewed and relied on Defendant's misrepresentations of "5.0 Peak HP" when making his purchase.  This reliance was to Mr. Pickett's detriment, and he would not have purchased Defendant's product had he known the actual horsepower.

32.     David Downing resides in Bellevue in the State of Ohio.  In the summer of 2019, Mr. Downing purchased Defendant's wet/dry vacuum for personal, family or household purposes.  Mr. Downing viewed and relied on Defendant's misrepresentations of "6.0 Peak HP" when making his purchase.  This reliance was to Mr. Downing's detriment, and he would not have purchased Defendant's product had he known the actual horsepower.

33.     Christopher Miller resides in Cincinnati in the State of Ohio.  In the May of 2019, Mr. Miller purchased Defendant's wet/dry vacuum for personal, family or household purposes.  Mr. Miller viewed and relied on Defendant's misrepresentations of "6.0 Peak HP" when making his purchase.  This reliance was to Mr. Miller's detriment, and he would not have purchased Defendant's product had he known the actual horsepower.

34.     Steven Taylor resides in Maryville in the State of Tennessee.  In December of 2016, Mr. Taylor purchased Defendant's wet/dry vacuum for personal, family or household purposes.  Mr. Taylor viewed and relied on Defendant's misrepresentations of "5.0 Peak HP" when making his purchase.  This reliance was to Mr. Taylor's detriment, and he would not have purchased Defendant's product had he known the actual horsepower.

35.     Syronda Gamble resides in Houston in the State of Texas.  In the November of 2019, Ms. Gamble purchased Defendant's wet/dry vacuum for personal, family or household purposes.  Ms. Gamble viewed and relied on Defendant's misrepresentations of "5.0 Peak HP" when making her purchase.  This reliance was to Ms. Gamble's detriment, and she would not have purchased Defendant's product had she known the actual horsepower.

36.     Steve Toth resides in Norfolk in the State of Virginia.  In May 2019, Mr. Toth purchased Defendant's wet/dry vacuum for personal, family or household purposes.  Mr. Toth viewed and relied on Defendant's misrepresentations of "3.5 Peak HP" when making his purchase.  This reliance was to Mr. Toth's detriment, and he would not have purchased Defendant's product had he known the actual horsepower.

37.     Karri Bell resides in Odanah in the State of Wisconsin.  In November of 2015, Ms. Bell purchased Defendant's wet/dry vacuum for personal, family or household purposes.  Ms. Bell viewed and relied on Defendant's misrepresentations of "5.0 Peak HP" when making her purchase.  This reliance was to Ms. Bell's detriment, and she would not have purchased Defendant's product had she known the actual horsepower.

38.     Defendant Emerson is a Missouri corporation with its principal place of business at 8000 W. Florissant Ave, St. Louis, Missouri 63136.  Defendant is a diversified global manufacturing and technology company with a wide range of products and services in the

industrial, commercial and consumer markets, including its tools and storage business.  One of Defendant's divisions is Emerson Professional Tools, which includes Emerson Tool Company and Ridge Tool Company (the RIDGID brand).  Emerson Tool Company is the manufacturer of a full line of Wet/Dry Vacuums sold under its RIDGID brand.  Ridge Tool Company is a wholly-owned subsidiary of Emerson Electric Company.

## FACTS

39.    A RIDGID vacuum is a heavy-duty version of the standard household vacuum cleaner. RIDGID's purportedly powerful motor is designed to vacuum and collect wet and dry materials into the cylinder via the attached hose.  RIDGID is also designed to vacuum and collect solid and liquid matter that is relatively large, which are items much heavier than a conventional household vacuum can collect.

40.    Horsepower ("HP") is an objective engineering term used to denote the power output of an electric motor. HP is a function of an electric motor's current, efficiency and voltage, and is represented by the following equation, where "HP" is power in horsepower, "V" is the AC voltage input into the device, "I" is current in amps utilized by the motor and "Eff" is the efficiency of the motor:

$$HP = V \times I \times Eff / 746$$

41.    Peak HP is heavily emphasized in the advertising, packaging and marketing of RIDGID.  The HP of a particular model is stamped prominently on the RIDGID itself.

42.    RIDGID's HP is one of the key factors that determines the price point of the vacuum.

43.    Defendant's RIDGID product line contains thirteen models with five distinct "peak" HP offerings:

    A.  6.5 HP;

    B.  6.0 HP;

    C.  5.0 HP;

    D.  3.5 HP;

    E.  2.5 HP.

44.     Defendant markets, advertises, and sells each RIDGID specifically representing the "Peak" HP, which creates higher expectations of performance among consumers. Defendant's advertising, marketing materials and packaging that describe the Product enumerate its HP, which the consumer sees prior to purchasing the Product and which is on the Product itself.

45.     However, the wet/dry vacuums owned by Plaintiffs and Class members produce materially less HP than Defendant represents and warrants resulting in less performance than is reasonably expected by Plaintiffs.  Although the various models of the Product sold by Defendant contain different HP representations, all of these representations materially overstate the true HP of the Product when measured or calculated through generally accepted scientific methods and equations.

46.     Plaintiffs' independent testing objectively determined that **none** of the tested RIDGID vacuum motors could meet their claimed peak horsepower ratings during operation.

47.     Assuming an unattainable motor efficiency of 100 percent, it is an indisputable fact that the maximum power output from any possible motor connected to a 120-volt outlet with a standard circuit breaker is 3.22 HP.  Any consumer appliance with a claimed power output greater than this upper limit is simply unsafe and unreasonable.

48.     Plaintiffs' testing revealed the following maximum horsepower for three of Defendant's RIDGID models:

| Claimed HP | Actual HP |
|:---:|:---:|
| 2.5 HP | 0.870 HP |
| 5.0 HP | 1.447 HP |
| 6.0 HP | 1.455 HP |

49.     Obviously, these tests results reveal Defendant's HP ratings are grossly misrepresented and overstated.

50.     Regardless of Defendant's explanation for its claimed "Peak" HP ratings, Defendant's use of the term "Peak" HP is objectively misleading in the context of a machine utilizing an electric motor of the type used in RIDGID.  Defendant's RIDGIDs are simply unable to perform or function at "Peak" HP during operation by a consumer.  As such, the claimed "Peak" HP rating Defendant represents for its RIDGIDs is materially overstated and incorrect, and Defendant's use of the term "Peak" HP to describe the functionality of its RIDGIDs is false and misleading with respect to its actual functionality.

51.     Because the RIDGID vacuums cannot reach the advertised HP or "Peak" HP while in operation, a reasonable consumer would be misled by Defendant's materially overstated HP representations that appear prominently on the RIDGID box, product, marketing materials, and Defendant's webpage.

52.     Defendant charges a premium for models of RIDGIDs that Defendant represents produce more HP than other models that cost less.

53.     However, Defendant's higher priced RIDGID models, including the models purchased by Plaintiffs, are not capable of, or are not reasonably capable of attaining, the increased HP represented by Defendant on the RIDGID and its packaging as compared to other lower priced models.

## CLASS ALLEGATIONS

54.    Plaintiffs bring this suit as representatives of a Nationwide Class ("the Nationwide Class") on behalf of consumers throughout the United States who purchased a RIDGID wet/dry vacuum ("the Class").   Alternatively, Plaintiffs also bring suit as representatives of multiple State Subclasses on behalf of consumers who purchased a RIDGID wet/dry vacuum in the same state as each Plaintiff has purchased his or her vacuum (the "State Subclasses").

55.    Plaintiffs bring this suit as representatives of the Nationwide Class and their respective State Subclasses, (collectively, "the Classes") on behalf of all individuals pursuant to Rule 23 of the Federal Rules of Civil Procedure, who fall within the relevant statutes of limitations and purchased a RIDGID wet/dry vacuum.  All consumers have claims and causes of action which are legally and factually in common with Plaintiffs in that they are all similarly situated, and Plaintiffs can serve as adequate class representatives for consumers in all states.

56.    The Nationwide Class is believed to comprise thousands of persons nationwide, and the State Subclasses, though necessarily fewer in number, also are comprised of thousands of persons within each respective state. Consequently, the individual joinder of individual consumers is impracticable whether on a nationwide or state basis.  The members of the Classes are so numerous it is impracticable to bring any or all of them before the Court in this action.

57.    Persons excluded from the Classes include: Defendant's legal representatives, officers, directors, assigns and successors, or any individual who has, or who at any time during the Classes period, had a controlling interest in Emerson Electric Company; the Judge to whom this case is assigned and any member of the Judge's immediate family; persons or entities that purchased RIDGID wet/dry vacuums for resale; and all those who validly and timely opt-out of the certified Classes.

58.    Plaintiffs reserve the right to amend or modify the definitions of the Classes with greater specificity, further division into subclasses or to limit particular issues as discovery and orders of this Court warrant.

59.    Common questions of law and fact exist as to members of the Classes and predominate over questions affecting only individual members of the Classes.  Common legal and factual questions include, but are not limited to:

A.    Whether Defendant has made representations about the Products' horsepower and/or other features affecting performance that are untrue, false, inaccurate or deceptive;

B.    Whether Defendant's conduct constitutes deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression or omission of any material fact in connection with the sale or advertisement of the products;

C.    Whether Defendant's conduct was unfair and/or deceptive;

D.    Whether Defendant violated state consumer protection laws;

E.    Whether Defendant's conduct was unjust;

F.    Whether Plaintiffs and class members have been damaged by Defendant's conduct; and

G.    Whether as a result of Defendant's conduct, Plaintiffs and class members are entitled to damages, restitution, equitable relief or other relief.

60.    As Plaintiffs purchased RIDGID wet/dry vacuums, and suffered a loss of money as a result, the claims of Plaintiffs are typical of the claims of the Classes.  Members of the Classes suffered the same type of injury and possess the same interests as Plaintiffs.

61.    Plaintiffs fairly and adequately represent and protect the interests of the Classes. Plaintiffs do not have any interest antagonistic to those of the Classes.  Plaintiffs retained competent and experienced counsel in the prosecution of this type of litigation.  The questions of

law and fact common to the members of the Classes overwhelmingly predominate over any questions affecting only individual members of the Classes.

62.     The class action is superior to other available methods for the fair and efficient adjudication of this controversy because members of the Classes number in the thousands and individual joinder is impracticable.  The expenses and burden of individual litigation would make it impracticable or impossible for proposed members of the Classes to prosecute their claims individually.  Trial of Plaintiffs' claims is also manageable.

63.     For these reasons, this case is maintainable as a class action pursuant to Federal Rule of Civil Procedure 23 since the questions of law or fact common to members of the Classes predominate over any individual questions affecting only individual members, and a class action is superior to other available methods.  Additionally, this suit is maintainable under Federal Rule of Civil Procedure 23 as Defendant has acted or refused to act on grounds applicable to the Classes, thereby making appropriate final injunctive relief to the Classes appropriate.

## COUNT I – BREACH OF EXPRESS WARRANTY
## (ON BEHALF OF THE NATIONWIDE CLASS AND EACH STATE SUBCLASS)

64.     Plaintiffs incorporate by reference all other paragraphs of this complaint as if fully set forth herein.

65.     This claim alleges breaches of implied warranty under UCC § 2-313 as enacted, in whole or in substantial part nationwide or by each respective State.

66.     The Plaintiffs bring this claim individually and on behalf of the other members of the Classes.

67.     The Plaintiffs, and each of the other members of the Classes formed a contract with Defendant at the time they purchased Defendant's RIDGID Products.  The terms of that contract included the promises and affirmations of fact Defendant makes on RIDGID's packaging and

labeling and through its marketing and advertising, including Defendant's promise that its RIDGID Products horsepower is a true and accurate representation as more fully described above. This marketing and advertising constitute express warranties and became part of the basis of the bargain. They are also part of the standardized contract between each of the Plaintiffs and each of the other members of the Classes and Defendant.

68.     In addition or in the alternative, Defendant made each of its above-described representations to induce Plaintiffs and each of the other members of the Classes, to rely on such representations concerning the purported benefits and efficacy of its RIDGID Products as a material factor in their decision(s) to purchase those RIDGID Products.

69.     Defendant expressly warranted in its advertising, marketing, and other promotional materials, and on RIDGID's labeling and packaging that the vacuums had certain peak horsepower, and those statements are untrue.

70.     All conditions precedent to Defendant's liability under this contract have been performed by the Plaintiffs and each of the members of the Classes, when they purchased Defendant's RIDGID Products. At all times relevant to this action, Defendant has breached its express warranties about its RIDGID Products because its Products do not conform to the representations of horsepower, which violates state express warranty laws.

71.     As a result of Defendant's breaches of its express warranties, the Plaintiffs and each of the other members of the Classes were damaged in the amount of the purchase price they paid for Defendant's RIDGID Products, in an aggregate amount to be proven at trial.

72.     The Plaintiffs, on behalf of themselves and the other members of the Classes, demand judgment against Defendant for compensatory damages for themselves and each of the other members of the Classes, as well as attorneys' fees, interest and costs.

73.     Within a reasonable time after the Plaintiffs and the class members knew or should have known of such breach, the Plaintiffs and other members of the Classes placed Defendant on notice thereof.

WHEREFORE, Plaintiffs and Classes pray for the relief requested in the Request for Relief set forth below in this Complaint.

## COUNT II – BREACH OF IMPLIED WARRANTY
## (ON BEHALF OF THE NATIONWIDE CLASS AND EACH STATE SUBCLASS)

74.     Plaintiffs incorporate by reference all other paragraphs of this complaint as if fully set forth herein.

75.     This claim alleges breaches of implied warranty under UCC § 2-314 as enacted, in whole or in substantial part nationwide or by each respective State.

76.     The Plaintiffs bring this claim individually and on behalf of the other members of the Classes.

77.     At all times relevant hereto, Defendant was a seller of its RIDGID Products.

78.     By placing its RIDGID Products in the stream of commerce, Defendant impliedly warranted that its Products were of merchantable quality in that it would pass without objection in the trade, was fit for the ordinary purposes for which it was to be used, and conformed to the promises or affirmations of fact made on the container or label or as otherwise promoted, marketed and/or advertised.

79.     Defendant breached the implied warranty of merchantability at the time of sale because the RIDGID Products would not pass without objection in the trade, were not fit for the ordinary purposes for which they were to be used and did not conform to the promises or affirmations of fact made on the container or label or as otherwise promoted, marketed and/or advertised.

80.     At all times relevant to this action, Defendant has breached its implied warranty of merchantability regarding its RIDGID Products in violation of state implied warranty laws.

81.     When required, the Plaintiffs and the members of the Classes are in privity with Defendant because Defendant's sale of its RIDGID Products is either direct or through authorized sellers. Upon information and belief, purchase through authorized sellers is sufficient to create such privity because, *inter alia*, such authorized sellers are Defendant's agents for the purpose of the sale of Defendant's RIDGID Products.

82.     As a result of the breach of the implied warranties, the Plaintiffs and the members of the Classes have been directly and proximately damaged in the amount of the price they paid for the Products in an aggregate amount to be proven at trial.

83.     Within a reasonable time after they knew or should have known of such breach, the Plaintiffs, on behalf of themselves and members of the Classes placed Defendant on notice thereof.

WHEREFORE, Plaintiffs and Classes pray for the relief requested in the Request for Relief set forth below in this Complaint.

## COUNT III– UNJUST ENRICHMENT
### (ON BEHALF OF THE NATIONWIDE CLASS AND EACH STATE SUBCLASS)

84.     Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein.

85.     Plaintiffs and members of the Classes conferred upon Defendant benefits that were non- gratuitous and constitute unjust takings.

86.     Defendant accepted or retained the benefits conferred by Plaintiffs and Classes despite Defendant's deceptive advertising, material misrepresentations, and omissions of material fact and/or fraudulent conduct with regard to the quality and performance of RIDGIDs.

87.     Retaining the benefits conferred upon Defendant by Plaintiffs and Classes under these circumstances makes Defendant's retention of these benefits unjust and inequitable.

88.     As a result of the foregoing, Plaintiffs and Classes suffered damages, as set forth more fully above.

89.     Because Defendant's retention of the benefits conferred by Plaintiffs and Classes is unjust and inequitable, Defendant must pay restitution in a manner established by this Court.

WHEREFORE, Plaintiffs and Classes pray for the relief requested in the Request for Relief set forth below in this Complaint.

## COUNT IV – VIOLATION OF CONSUMER PROTECTION LAWS
### (ON BEHALF OF EACH STATE SUBCLASS)

90.     Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein.

91.     Plaintiffs bring this claim individually and on behalf of the members of their respective State Subclasses against Defendant.

92.     Defendant placed the identical vacuums into the stream of commerce of every one of the fifty States and the District of Columbia, utilizing identical misrepresentations relating to the "peak" horsepower of these devices.

93.     In connection with the sale and/or advertisement of the RIDGIDs, Defendant made representations about the RIDGIDs horsepower that are untrue, false, inaccurate or deceptive.  Defendants knew that representations concerning horsepower would be reasonably equated to performance.  As such, Defendant's conduct constitutes deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression or omission of a material fact.

94.     At all relevant times, Defendant's sales and/or distribution of the RIDGIDs was a sale, lease, offer for sale or lease, or attempt to sell or lease merchandise for cash or on credit.

95.     At all relevant times, Defendant's manufacturing, marketing, advertising, sales and/or distribution of the RIDGIDs constituted an attempt by publication, dissemination, solicitation, circulation, or any other means to induce, directly or indirectly, any person to enter into any obligation or acquire any title or interest in any merchandise.

96.     Defendant uniformly misrepresented to Plaintiffs and the members of the State Subclasses by means of its advertising, marketing, and other promotional materials, and on the RIDGID's labeling and packaging, the RIDGID's true nature and quality because, among other things, the RIDGID does not actually conform to the representations of horsepower made by Defendant.

97.     Defendant has violated the various consumer protection statutes cited, *infra*, by engaging in practices that constitute deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression or omission of any material fact in connection with the sale or advertisement of the RIDGIDs.

98.     As a direct and proximate result of Defendant's improper conduct, Plaintiffs and the members of the State Subclasses have suffered damages and ascertainable losses, in amounts to be determined at trial, by paying more for the RIDGIDs than they would have and/or by purchasing the RIDGID when they would not have if the horsepower of the RIDGID had not been misrepresented.

99.     As to each State Subclass, by mislabeling and selling the Product as having qualities, benefits and characteristics which they do not have, Defendant has engaged in unfair

competition or unlawful, unfair, misleading, unconscionable, or deceptive acts in violation of the state consumer statutes listed below as applied to each corresponding State Subclass.

100.     Defendant has engaged in unfair competition, unfair or deceptive acts or practices and false advertising in violation of the Alabama Deceptive Trade Practices Act, Ala. Code. §§ 8-19-1, *et. seq.*

101.     Defendant has engaged in unfair competition, unfair or deceptive acts or practices and false advertising in violation of the Arizona Consumer Fraud Act, Ariz. Rev. Stat. Ann §§ 44-1521, *et. seq.*

102.     Defendant has engaged in unfair competition, unfair or deceptive acts or practices and false advertising in violation of Cal. Bus. & Prof Code § 17200, *et. seq.*, § 17500, *et seq.*, and Cal. Civ. Code § 1750, *et. seq.*

103.     Defendant has engaged in unfair competition, unfair or deceptive acts or practices and false advertising in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et. seq.*

104.     Defendant has engaged in unfair competition, unfair or deceptive acts or practices and false advertising in violation of the Georgia Fair Business Practices Act, Ga. Code Ann. §§ 10-1-390, *et. seq.*

105.     Defendant has engaged in unfair competition, unfair or deceptive acts or practices and false advertising in violation of the Iowa Consumer Fraud Act, Iowa Code §§ 714.16, *et. seq.*

106.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Illinois Consumer Fraud and Deceptive Practices Act, 815 Ill. Comp. Stat. 505/1, *et seq.*

107.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of the Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq.*

108.     Defendant has engaged in unfair competition, unfair or deceptive acts or practices and false advertising in violation of the Massachusetts Regulation of Business Practice and Consumer Protection Act, Mass. Gen. Laws Ann. ch. 93A, §§ 1, *et. seq.*

109.     Defendant has engaged in unfair competition, unfair or deceptive acts or practices and false advertising in violation of the Maryland Consumer Protection Act, Md. Code Ann., Com. Law §§ 13-101, *et. seq.*

110.     Defendant has engaged in unfair competition, unfair or deceptive acts or practices and false advertising in violation of the Maine Unfair Trade Practices Act, Me. Rev. Stat. Ann. tit. 5, §§ 205A, *et. seq.*

111.     Defendant has engaged in unfair competition, unfair or deceptive acts or practices and false advertising in violation of the Michigan Consumer Protection Act, Mich. Comp. Laws Ann. §§ 445.903, *et seq.*

112.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Mo. Rev. Stat. §§ 407.020, *et seq.*

113.     Defendant has engaged in unfair competition, unfair or deceptive acts or practices and false advertising in violation of the Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq.*

114.     Defendant has engaged in unfair competition, unfair or deceptive acts or practices and false advertising in violation of the New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. §§ 358-A:1, *et seq.*

115.     Defendant has engaged in unfair competition, unfair or deceptive acts or practices and false advertising in violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*

116.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law §§ 349, *et seq.*

117.     Defendant has engaged in unfair competition, unfair or deceptive acts or practices and false advertising in violation of the Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. §§ 1345.01, *et seq.*

118.     Defendant has engaged in unfair competition, unfair or deceptive acts or practices and false advertising in violation of the Rhode Island Unfair Trade Practice and Consumer Protection Act, R.I. Gen. Laws §§ 6-13.1-1, *et seq.*

119.     Defendant has engaged in unfair competition, unfair or deceptive acts or practices and false advertising in violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-101, *et seq.*

120.     Defendant has engaged in unfair competition, unfair or deceptive acts or practices and false advertising in violation of the Texas Deceptive Trade Practices—Consumer Protection Act, Tex. Bus. & Com. Code Ann. §§ 17.41, *et seq.*

121.     Defendant has engaged in unfair competition, unfair or deceptive acts or practices and false advertising in violation of the Virginia Consumer Protection Act, Va. Code Ann §§ 59.1-196, *et seq.*

122.     Defendant has engaged in unfair competition, unfair or deceptive acts or practices and false advertising in violation of the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, *et seq.*

123.    The acts, practices, misrepresentations and omissions by Defendant described above, and Defendant's dissemination of deceptive and misleading advertising and marketing materials in connection therewith, occurring in the course of conduct involving trade or commerce, constitute unfair methods of competition and unfair or deceptive acts or practices within the meaning of each of the above-enumerated statutes, because each of these statutes generally prohibit the sale of products which are prohibited by law.  Defendant violated each of these statutes by making illegal sales and also by representing RIDGIDs as having "peak" horsepower they do not have.

124.    Plaintiffs and members their respective State Subclasses suffered a loss of money as a result of Defendant's misrepresentations because: (a) they would not have purchased RIDGIDs on the same terms if the true facts concerning their horsepower had been known; (b) they paid an unfair price premium due to the misrepresentations concerning horsepower; and (c) the vacuums did not perform as promised.

125.    As a result of the foregoing, Plaintiffs and State Subclasses have suffered damages, as set forth more fully above.

WHEREFORE, Plaintiffs and State Subclasses pray for the relief requested in the Request for Relief set forth below in this Complaint.

## <u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

A.    For an order certifying the Nationwide Class pursuant to Federal Rule of Civil Procedure 23 and naming Plaintiffs as Class Representatives and their attorneys as Class Counsel to represent the Class members;

B.    For orders certifying the State Subclasses pursuant to Federal Rule of Civil Procedure 23 and naming Plaintiffs as Class Representatives and their

attorneys as Class Counsel to represent the Class members for each respective State Subclass;

C.     For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

D.     For an order declaring Defendant's conduct violates the statutes referenced herein;

E.     For awarding actual, compensatory, consequential and/or incidental damages to Plaintiffs and members of the proposed Classes in excess of $5,000,000;

F.     For restitution to Plaintiffs and members of the proposed Classes;

G.     Awarding declaratory and injunctive relief as permitted by law or equity including a preliminary and permanent injunction enjoining Defendant from continuing the unlawful practices as set forth herein and directing Defendant to identify, with Court supervision, victims of their conduct and pay them restitution and disgorgement of all monies acquired by Defendant by means of any act or practice declared by this Court to be wrongful;

H.     Awarding punitive damages in an amount to be determined at trial;

I.     Awarding pre-judgment interest;

J.     Awarding post-judgment interest;

K.     Awarding attorneys' fees and costs;

L.     Providing such further relief as may be fair and reasonable.

## **<u>DEMAND FOR TRIAL BY JURY</u>**

Plaintiffs hereby demand a trial by jury of all issues so triable.

Dated: August 4, 2020

*/s/ Eric D. Holland*
Eric D. Holland #39935MO
R. Seth Crompton #57448MO
**HOLLAND LAW FIRM**
300 N. Tucker Blvd., Suite 801
St. Louis, MO 63101
Tel: (314) 241-8111
Fax: (314) 241-5554
eholland@hollandtriallawyers.com
scrompton@hollandtriallawyers.com

John G. Simon, # 35231MO
Anthony G. Simon, # 38745MO
**THE SIMON LAW FIRM, P.C.**
800 Market Street, Suite 1700
St. Louis, MO 63101
Telephone: (314)241-2929
Facsimile: (314)241-2029
jsimon@simonlawpc.com
asimon@simonlawpc.com

***Co-Lead Counsel for Plaintiffs***

Richard J. Arsenault
**NEBLETT, BEARD & ARSENAULT**
2220 Bonaventure Court
P.O. Box 1190
Alexandria, LA 71309
Telephone: (216)621-8484
Facsimile: (216)771-1632
rarsenault@nbalawfirm.com

Charles E. Schaffer
**LEVIN, FISHBEIN, SEDRAN & BERMAN**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: (215)592-1500
Facsimile: (215)592-4663
cschaffer@lfsblaw.com

**PARKER WAICHMAN LLP**
27300 Riverview Center Blvd.
Suite 103
Bonita Springs, FL 34134
JDinan@yourlawyer.com

***Executive Committee***

<u>**CERTIFICATE OF SERVICE**</u>

 The undersigned certifies that a copy of the foregoing was served by electronic mail through the CM/ECF system this 4th day of August, 2020, to all counsel of record entered in this matter.

       */s/ Eric D. Holland*
       Eric D. Holland #39935MO
       **HOLLAND LAW FIRM**
       300 N. Tucker Blvd., Suite 801
       St. Louis, MO 63101
       Tel: (314) 241-8111
       Fax: (314) 241-5554
       eholland@hollandtriallawyers.com